UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **MICHAEL CEURIC, Individually and behalf of all others similarly situated** | § § § | Docket No. |
| **Plaintiff,** | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | **CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/** |
| **TIER ONE, LLC D/B/A TIER 1 RENTAL AND DISTRIBUTION** | § § § | **FED. R. CIV. P. 23** |
| **Defendant.** | § § | |

### ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

#### I. SUMMARY

1. Plaintiff Michael Ceuric ("Ceuric") brings this lawsuit to recover unpaid overtime wages and other damages under Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New Mexico Minimum Wage Act, NMSA § 50-4-19, *et seq.*, ("NMMWA") against Defendant Tier 1 Rental and Distribution ("Tier 1" or "Defendant").

2. Tier 1 is a rental and distribution company operating primarily in Pennsylvania with headquarters in Pittsburgh and a satellite location in Beaver County. Tier 1 specializes in trucking, solids control equipment, consulting and cut-dry solidification services. Tier 1 employs consultants such as Solids Control Operators to carry out its work.

3. Tier 1 required Ceuric to work substantial overtime without overtime compensation.

4. Ceuric worked at least 12 hours a day for at least 7 days a week. As a result, he often worked weeks consisting of 84 hours or more.

5. Tier 1 paid Ceuric a set amount per day, regardless of the number of hours worked. Ceuric never received overtime pay for work performed in excess of 40 hours in a week.

6. As a result, Ceuric did not receive overtime pay at one and one half times his regular

rate of pay when working over 40 hours a week.

7. This class and collective action alleges that Tier 1 misclassified Ceuric as exempt from the overtime requirements as day rate independent contractor, alleges that Tier 1 failed to pay Ceuric overtime at one and one half times their regular rate of pay, and seeks to recover the unpaid overtime wages, liquidated damages, attorney fees, and costs permitted by the FLSA and NMMWA.

## II.     JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. §1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and because Rice Energy's corporate headquarters are located in this District.

## III.     THE PARTIES

11. Plaintiff Michael Ceuric has worked exclusively for Tier 1 as solids control operator. Throughout his employment with Tier 1, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. Ceuric's written consent has been filed with the Court.

> **All solids control independent contractors, paid by Tier 1's day-rate system, in the past three years. ("Putative Class Members").**

12. Plaintiffs seek conditional certification is such a class under 29 U.S.C. § 216(b).

13. Plaintiffs also seek class certification of such a class under FED. R. CIV. P. 23 under the NMMWA.

14. Tier One, LLC, d/b/a Tier 1 Rental and Distribution is based in Pittsburgh, Pennsylvania and can be served at its principal place of business at 2 Penn Center W, Suite 328,

Pittsburgh, PA 15276.

## IV. COVERAGE UNDER THE FLSA

15. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

18. At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, Tier 1 treated Plaintiffs and the Putative Class Members as employees and uniformly dictated the pay practices Plaintiff and its other employees (including its so-called "independent contractors") were subjected to.

20. Tier 1's misclassification of Plaintiff as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## V.   FACTS

21. Tier 1 is a rental and distribution services company with significant operations throughout Pennsylvania. Plaintiff Michael Ceuric, for example, worked as a solids control operator

on behalf of Tier 1 in New Mexico. Tier 1 provides trucking, solids control equipment, consulting and cut-dry solidification services to the oil and gas industry since 2014.

22. Many of these individuals worked for Tier 1 as solids control consultants (among other positions) on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work. Specifically, Tier 1 paid its solids control independent contractors a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that work week) and failed to provide its solids control independent contractors with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

23. For example, Plaintiff Michael Ceuric was employed by Tier 1 as a solids control consultant during the statutory time period and was paid on a day-rate basis. In this regard, his primary job duties (and the job duties of all other solids control consultants employed by Tier 1 who were paid a day-rate) included maintaining and operating solids control equipment (centrifuge, drying shakers, desanders, desilters, etc.), repairing electrical issues, and assisting with rigging up and rigging down of solids control equipment. Tier 1 typically scheduled Mr. Ceuric to work twelve (12) hour shifts, for as many as seven (7) days a week. Mr. Ceuric estimates that he worked anywhere from eighty-four (84) to one-hundred (100) hours per week while employed by Tier 1 as a solids control consultant.

24. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Tier 1 and/or the operator Tier 1contracted with. Virtually every job function was pre-determined by Tier 1 and/or the operator Tier 1contracted with, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of

the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree. The Putative Class Members did not have any supervisory or management duties. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

25. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members were generally scheduled to work eighty-four (84) hours per workweek, but often worked more. Instead of paying them overtime, Tier 1 paid the Putative Class Members a day-rate. Tier 1 denied the Putative Class Members overtime for any and all hours worked in excess of forty (40) hours in a single workweek. As the controlling law makes clear, the manual labor/technical duties which were performed by the Putative Class Members consist of *non*-exempt work. Therefore, Tier 1 owes back overtime wages to hundreds of their solids control independent contractors, all of whom work long hours each workweek.

### VI. FLSA AND NMMWA VIOLATIONS

26. As set forth herein, Tier 1 violated the FLSA and NMMWA by misclassifying Ceuric and the Class Members as independent contractors and paying only a day rate for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

27. Tier 1 knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Ceuric and the Class Members proper overtime compensation. Tier 1's failure to pay proper overtime compensation to Ceuric and the Class Members and intentional misclassification of Ceuric and the Class Members was neither reasonable, nor was the decision not to pay proper overtime to Ceuric and the Class Members made in good faith.

28. Accordingly, Ceuric and the Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b); NMSA § 50-4-26.

29. The improper pay practices at issue were part of a continuing course of conduct, entitling Ceuric and the Class Members to recover for all such violations, regardless of the date they occurred.

### VII. CLASS AND COLLECTIVE ACTION ALLEGATIONS

30. As described above, Ceuric and the Class Members have been victimized by MVCI's pattern, practice, and/or policy, which is in willful violation of the FLSA and NMMWA.

31. Many Class Members worked alongside Ceuric and reported that they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA and NMMWA.

32. Many Class Members, regardless of the division or location in which the worked, performed similar job duties to Ceuric.

33. Thus, Tier 1 imposed a uniform practice or policy on Ceuric and the Class Members regardless of any individualized factors.

34. Ceuric and the Class Members received a day rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation.

35. As described above, these day rate Class Members are similarly situated to Ceuric in terms of relevant job duties, pay provisions, and employment practices.

36. Tier 1's failure to pay wages and overtime compensation at the rates required by the FLSA and NMMWA result from generally applicable, systematic policy and/or practice which are not dependent on the personal circumstances of any member of the day rate Class Members.

37. Ceuric's experiences are typical of the experiences of all day rate Class Members.

38. Ceuric has no interests contrary to, or in conflict with, the members of the FLSA and NMMWA Class Members. Like each member of the proposed classes, Ceuric has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

39. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

40. Absent this action, many FLSA and NMMWA Class Members likely will not obtain redress of their injuries and Tier 1 will reap the unjust benefits of violating the FLSA and NMMWA.

41. Furthermore, even if some of the FLSA and NMMWA Class Members could afford individual litigation against Tier 1, it would be unduly burdensome to the judicial system.

42. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

43. The questions of law and fact common to each of the FLSA and NMMWA Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Tier 1 employed the FLSA and NMMWA Class Members within the meaning of the FLSA and NMMWA;

   (b) Whether the FLSA and NMMWA Class Members were exempt from overtime as independent contractors;

   (c) Whether Tier 1's decision to not pay overtime to the FLSA Class Members and was made in good faith; and

   (d) Whether Tier 1's violation of the FLSA was willful.

44. Ceuric's claims are typical of the FLSA and NMMWA Class Members' claims. Ceuric and the FLSA and NMMWA Class Members have sustained damages arising out of Tier 1's illegal

and uniform employment policy.

45. Ceuric knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

46. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## VIII.   JURY DEMAND

47. Ceuric demands a trial by jury.

## IX.   RELIEF SOUGHT

48. WHEREFORE, Ceuric prays for judgment against Tier 1 as follows:

(a) For an order certifying class action(s) under Rule 23 for the purposes of the claims under New Mexico law;

(b) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(c) For an order finding Tier 1 liable for violations of state and federal wage laws with respect to Ceuric and all Class Members covered by this case;

(d) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Ceuric and all Class Members covered by this case;

(e) For a judgment awarding Ceuric and all Class Members covered by this case their costs of this action;

(f) For a judgment awarding Ceuric and all Class Members covered by this case their attorneys' fees;

(g) For a judgment awarding Ceuric and all Class Members covered by this case pre - and post-judgment interest at the highest rates allowed by law; and;

    (h)    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Joshua P. Geist*
    Joshua P. Geist
    PA. I.D. No. 85745
    **GOODRICH & GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: 412-766-1455
    Fax: 412-766-0300
    josh@goodrichandgeist.com

AND

Michael A. Josephson
Pennsylvania Bar No. 308410
Texas Bar No. 24014780
(*Pending Pro Hac Vice*)
Andrew Dunlap
Texas Bar No. 24078444
*(Pending Pro Hac Vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**