**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **MICHAEL CEURIC, Individually and behalf of all others similarly situated,** | § § § | **Docket No. 2:17-cv-01240** |
| **Plaintiff,** | § § | **JURY TRIAL DEMANDED** |
| **v.** | § § § | **CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/** |
| **TIER ONE, LLC D/B/A TIER 1 RENTAL AND DISTRIBUTION** | § § § § | **FED. R. CIV. P. 23** |
| **Defendant.** | § § | |

**CEURIC'S BRIEF IN SUPPORT OF MOTION TO COMPEL SUBPOENA**
**RESPONSES AND DOCUMENTS FROM BOS SOLUTIONS, INC.**

### I.      Introduction

Plaintiff Michael Ceuric ("Plaintiff," "Ceuric") needs FLSA discovery to address the issues in this case, and Defendant Tier One, LLC ("Tier One") has pointed the finger at third-party BOS Solutions, Inc. ("BOS) as the entity with many of the answers. For that reason, on February 19, 2018, Ceuric served a subpoena upon BOS for information relevant to this matter. *See* Subpoena, attached as Exhibit A. On February 28, 2018, BOS objected, refusing to answer any of the questions or provide any documents. Objections to Plaintiff Michael Ceuric's Subpoena and Document Requests (BOS' Objections), attached as Exhibit B. Counsel for Ceuric attempted to resolve the matter without court intervention, but the parties were unable to do so. *See* Email exchange between counsel, attached as Exhibit C. Ceuric now appeals to the court to compel BOS to provide the information and documents he needs to pursue his claims against Tier One.

## II.      Legal Standard

Rule 34(c) of the Federal Rules of Civil Procedure provides that a "nonparty may be compelled to produce documents and tangible things or to permit an inspection" by issuance of a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 34(c) (2018). Parties to an action are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. Civ. P. 26(b)(1) (2018). When, like here, the subpoenaed party has objected to the subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production." FED. R. CIV. P. 45(d)(2)(B)(i) (2018). "The determination of relevance is within the district court's discretion." *Barnes Found. v. Twp. of Lower Merion,* 1996 WL 862451, at *2 (E.D. Pa. Dec.23, 1996).

## III.      Argument & Authorities

### A.      BOS has Relevant Information Regarding Tier One's Pay Practices.

BOS has been identified by Tier One and its employees as an entity with relevant information about this case. In Tier One's responses to Ceuric's Requests for Production, Tier One noted that there are "communications between counsel for BOS Solutions, Inc. and counsel for Tier One, Inc."[1] regarding the lawsuit. *See* Defendant's Written Responses to Plaintiff Michael Ceuric's First Requests for Production to Defendant Tier One, LLC D/B/A Tier 1 Rental and Distribution, attached as Exhibit E at 3. In addition, Tier One has produced a number of emails between Tier One and BOS in which BOS dictates parameters regarding the pay practices between the two companies. *See* Exhibit F (BOS requesting that Tier One format their purchase orders a certain way; BOS requesting that a

---

[1] Tier One claims these communications are protected by the attorney work product privilege, but it does not list these communications on any of the privilege logs it provided to Ceuric. *See* Privilege Logs produced by Tier One, attached as Exhibit D. As a result, it is impossible to ascertain exactly what information is being withheld. "[T]he obligation to log privileged documents and to produce privilege logs is 'mandatory under the specific terms of Rule 26(b)(5).'" *Drone Techs., Inc. v. Parrot S.A.*, 2015 WL 12752848, at *3 (W.D. Pa. Feb. 20, 2015), *adopted*, 2015 WL 12752849 (W.D. Pa. Feb. 24, 2015), *citing Rhoads Indus. V. Bldg Materials Corp. of Am.*, 254 F.R.D. 216, 221 (E.D. Pa. 2008). Indeed, "withhold[ing] materials without such notice is contrary to the rule ... and may be viewed as a waiver of the privilege or protection.'" *Id.*, *quoting Smith v. James C. Hormel Sch. of Va. Inst. of Autism*, 2010 WL 3702528, at *4 (W.D. Va. Sept. 14, 2010).

certain BOS employee, Joe Gizzi, be copied on all emails; Tier One adjusting an invoice pursuant to a conversation that it had with BOS).

Further, deposition testimony from a Tier One employee confirms that BOS Solutions has much information that is relevant to Ceuric's claims and defenses in this matter. *See* Deposition of Dylan Snedeker, attached as Exhibit G; *see also* FED. R. CIV. P. 26(b)(1). On March 8, 2018, Dylan Snedeker, a Tier One Field Supervisor, gave deposition testimony on behalf of the company regarding his attempts to retaliate against an Opt-in Plaintiff in this case, Brandon Fink. *See generally* Ex. G. In that deposition, Snedeker addressed the working relationship between BOS and Tier One because Fink had alleged that Snedeker threatened that BOS would "kick[] [him] off of the rig" if it discovered that he had joined this lawsuit. Declaration of Brandon Fink at ¶ 4, attached as Exhibit H.

Snedeker explained his statement as follows: "We represent BOS. Our company represents BOS. And … when I told him that, I said that … BOS could see this as … you not representing Tier One to your fullest potential." Ex. G at 78:17-22. Snedeker then confirmed the realities of this relationship by further describing the interactions between BOS, Tier One, and Plaintiffs. For example, Snedeker testified that "BOS has its own way that it wants its projects completed"; that BOS has its "own set of forms and paperwork that need to be completed"; that "solids control workers are [] integral to BOS operations"; that some of the Tier One employees would work for BOS "for months at a time"; and that "once a solids control tech from Tier One is assigned to BOS's projects, BOS tells those workers what their shifts are going to be and [sets] their schedule." Ex. G at 82:6-25 to 83:1-6, 15-18. When asked if a solids control technician could turn down work, Snedeker answered that he could, but "[h]e wouldn't go to work for BOS" anymore. Ex. G at 83:7-14.

Snedeker then elaborated on the relationship between Tier One and BOS. Snedeker testified that, in October 2017, Tier One transitioned its workers from being classified as "consultants" to employees because some of its "main customers," including BOS, refused to use to "1099 employees"

3

anymore. Ex. G, at 9:10-25 to 10:1-24. Snedeker added that BOS "handpick[s] their employees," and that "they determine who's on the rig." Ex. G at 79:6-10. He testified that BOS provides "all of the equipment out on the rig" and that "Tier One provides the man power." Ex. G at 79:18-25 to 80:21. As a solids control technician, Plaintiff simply "provide[d] himself." Ex. G at 81:10-13. In fact, according to Snedeker, "BOS has its own supervisor because the manpower, is Tier One along with BOS or TDT, whichever other company is out there working." Ex. G at 81:16-19. Tier One and BOS also shared liability in the case of accidents. For example, "[i]f it was a Tier One employee that the manpower issue was with, it would come back on Tier One," but "[i]f [the] equipment malfunctioned … it's all on BOS." Ex. G at 85:16-19.

Based on this evidence, there can be no question that BOS has distinct and relevant information regarding the pay practices to which Tier One subjected its employees. The breadth of this information cannot be gained from Tier One alone. BOS needs to remove its objections and respond now.

**B.      Discovery in This Lawsuit Does Not Impact the Proceedings in *Kolasa v. BOS Solutions*.**

BOS complains that Plaintiff's requests here will interfere with Judge Kelly's management of discovery in the *Kolasa v. BOS Solutions, Inc.* matter. Ex. A at 2. In *Kolasa*, Judge Kelly has stayed full discovery pending her decision on conditional certification. *Kolasa*, No. 2:17-cv-01087, ECF 64 at (W.D. Pa. Mar. 8, 2018), attached as Exhibit I. But, here, conditional certification has already been determined and the class is limited to solids control technicians. ECF 31-1. Further, in the *Kolasa* case, BOS complained that Kolasa sought information from "five vendors," but again, Ceuric only seeks information from BOS related to one vendor: Tier One. Contrary to BOS' exaggerations, Plaintiff's requests are not an "end-around" discovery in the *Kolasa* case. Ceuric's requests are narrowly tailored to information and documents concerning the **solid control technicians** that BOS sourced from **Tier One**. BOS should be compelled to produce this relevant information and documents now.

4

**C.   Both Tier One and BOS Can Be Liable for Plaintiff's and Class Members' Damages.**

BOS tries to shift its discovery responsibilities by pointing the finger solely at Tier One, but "[u]nder the FLSA, multiple persons or entities can be responsible for a single employee's wages as 'joint employers' in certain situations." *Thompson*, 748 F.3d at 148–49 (citing 29 C.F.R. § 791.2(b)(3)). In "these circumstances, each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations." *Id.* Indeed, "where two or more employers exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers'" under the Act. *In re Enterprise Rent-A-Car*, 683 F.3d at 468 (quoting *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982). This finding is consistent with the FLSA's regulations regarding joint employment, which state that a joint employment relationship will generally be considered to exist "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with another employer." *Id.* (quoting 29 C.F.R. § 791.2(b)); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 at 219 (3d Cir. 2015) (noting with approval that the Fourth Circuit had "held in the Title VII context that both a staffing firm and its client were joint employers of a temporary employee")(citing *Butler v. Drive Automotive Industries of America*, 793 F.3d 404, 410 (4th Cir. 2015)); *Jackson v. Fed. Nat'l Mortgage Ass'n*, 181 F. Supp. 3d 1044, 1054 (N.D. Ga. 2016)(finding that a "business that utilizes staffing agencies may be deemed a joint employer of the staffing agency's employees"); *Watson v. Advanced Dist. Servs., LLC*, 298 F.R.D. 558, 560-66 (M.D. Tenn. 2014)(finding joint employment relationship and conditionally certifying FLSA collective action by staffing agency workers). Clearly, both Tier One and BOS can be considered

Plaintiff's employer. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 318–19 (3d Cir. 2007)(citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir. 1993))("Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy [his] whole judgment by execution against any one of the multiple defendants who are liable to him."). BOS cannot avoid its responsibility to provide relevant documents and information in this action by hiding behind Tier One.

### D.    BOS' General Objections Should be Struck.

BOS globally objects to the discovery requests with the generic complaints that they are "unduly burdensome, overbroad, premature, harassing, and would place significant expense on BOS." BOS' Objections at 2. Courts routinely frown upon and deny such general objections because they serve no legitimate purpose and obstruct the purpose of discovery. *American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 131 (E.D. Pa. 2006) (noting that "general objections to an entire set of interrogatories is improper"); *see also Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982). Rules 33 and 34(b)(2)(B) and (C) of the Federal Rule of Civil Procedure require Defendant to state its objections with specificity, and objections that do not comply with procedural rules and are routinely held to be meaningless. *See Parisi v. State Farm Mutual Automobile Ins. Co.*, 2017 WL 4403326, *1 (Oct. 2, 2017 W.D. Pa.)("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient").

Moreover, the Federal Rules of Civil Procedure, expressly provide for the relief Ceuric requests here. FED. R. CIV. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things"). For example, in *Gardella v. Prodex Int'l, Inc.,* 2007 WL 710289, *1 (Mar. 5, 2007 E.D. Pa.), Christopher Gardella ("Gardella") brought suit against Prodex International, Inc. ("Prodex") for injuries arising out of an alleged wrongful termination. According to Gardella,

6

Prodex hired him away from a competitor and offered him a three-year contract. *See id.* Gardella argued, among other things, that he would not have left his former employment but for Prodex's offer. *See id.* Prodex issued a subpoena to Gardella's former employer seeking information relating to Gardella's employment. *See id.* Like BOS, the former employer objected to the subpoena claiming that it was irrelevant, unlikely to lead to admissible evidence, designed to harass, and unduly burdensome. *See id.*

The court granted the motion to compel pursuant to the subpoena, noting that Gardella's employment record was "obvious[ly]" relevant to Prodex's defense of Gardella's claims. *Id.* at *3. The court also held that the subpoena was not unduly burdensome because it "provide[d] a detailed list of the materials to be produced, none of which pertain[ed] to anything other than Gardella's employment history." *Id.* Finally, the court held that "although [the former employer] may find the request annoying, it does not appear that it was made to harass." *Id.*

Here, like in *Gardella*, the discovery sought is "obviously" relevant to Ceuric's claims. Indeed, BOS does not object that the requests are unlikely to lead to the discovery of admissible evidence. In addition, the subpoena is not unreasonably burdensome because, like the subpoena in *Gardella*, it provides a "detailed list" of the materials to be produced and the materials pertain directly to the class members at issue in this case, solids control technicians sourced from Tier One. Simply because BOS may find the requests to be "annoying," does not mean that they are meant to harass.

BOS should be required to remove its generic objections and respond with the relevant information and documents that it has.

### E.    Ceuric's Subpoena Is Not Procedurally Defective.

Finally, BOS complains that the subpoena is "procedurally defective because the requested location for production is more than 100 miles from where BOS regularly transacts business." Ex. A at 3. Federal Rule of Civil Procedure 45(c)(2)(A) provides that a "subpoena may command

… production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." For companies, the place of compliance has been deemed "a location within 100 miles of where [the company] is located or regularly transacts business." *Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017). According to BOS' website, its corporate headquarters are in Houston, Texas, and it also has offices in Smithfield, Pennsylvania. *See* BOS Solutions' "Contact Us" webpage, http://www.bos-solutions.com/index.php/contact (last visited Mar. 27, 2018). Ceuric will accept compliance with the subpoena at his counsel's offices in Houston, Texas (Josephson Dunlap) or in Pittsburgh, Pennsylvania (Goodrich & Geist). Both of these locations are less than 100 miles from BOS' Houston headquarters and its office in Smithfield. For this reason, BOS' objection that Ceuric's subpoena is procedurally defective has no merit.

## IV.    CONCLUSION

For the foregoing reasons, Ceuric respectfully requests that BOS be compelled to respond to Ceuric's Februry 19, 2018 subpoena within 30 days from the date an order is entered.

Respectfully submitted,

*/s/ Jennifer M. Solak*
Michael A. Josephson
PA Bar No. 308410
Andrew W. Dunlap
Texas Bar No. 24078444
(Admitted *Pro Hac Vice*)
adunlap@mybackwages.com
Jennifer M. Solak
Texas Bar No. 24060634
(Admitted *Pro Hac Vice*)
jsolak@mybackwages.com
**Josephson Dunlap Law Firm**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713-352-1100
Facsimile: 713-352-3300

AND

Joshua P. Geist (PA 85745)
josh@goodrichandgeist.com
**Goodrich & Geist, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Telephone: 412-766-1455
Facsimile: 412-766-0300

AND

Richard J. (Rex) Burch
Texas State Bar No. 24001807
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I served the foregoing document on counsel for BOS through email and certified mail, with a return receipt requested, on April 13, 2018. I served the foregoing document on counsel for Defendant via the Court's electronic filing system.

*/s/ Jennifer M. Solak*
Jennifer M. Solak

9