IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| MICHAEL CEURIC, Individually and behalf of all others similarly situated | § § § | Docket No. 2:17-cv-01240 |
| Plaintiff, | § § | JURY TRIAL DEMANDED |
| v. | § § | CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/ |
| TIER ONE, LLC D/B/A TIER 1 RENTAL AND DISTRIBUTION | § § § | |
| Defendant. | § § | FED. R. CIV. P. 23 |

**PLAINTIFF'S MOTION
FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND
PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT**

**Michael A. Josephson**
Michael A. Josephson
Pennsylvania Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Joshua P. Geist**
PA. I.D. No. 85745
GOODRICH & GEIST, P.C.
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
(Pending Pro Hac Vice)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF'S**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 1

III.   SETTLEMENT TERMS ...................................................................................... 2

IV.    ARGUMENT & AUTHORITY .............................................................................. 4

    A.   The FLSA settlement agreement should be approved by the court.......................................4

    B.   A *Bona Fide* Dispute Existed .................................................................5

    C.   The settlement is fair and reasonable ...........................................................7

        1.   The complexity, expense and likely duration of the litigation support approval of the settlement ...............................................................................8

        2.   The class supports to the settlement ..................................................9

        3.   Settlement is appropriate at this stage of the proceedings ..........................9

        4.   The settlement is fair and reasonable in light of the risks to establishing liability and damages, and the risk of maintaining the class action through the trial .........................9

        5.   The settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation ...............................................11

V.     THE RULE 23 SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT  13

    A.   The standards and procedures for preliminary approval..........................................14

    B.   Certification of the settlement class is appropriate ...............................................15

    C.   The elements of rule 23(a) are satisfied for settlement purposes only in the present case 16

        1.   Numerosity under rule 23(a)(1)..........................................................16

        2.   Commonality under Rule 23(a)(2).......................................................17

        3.   Typicality under Rule 23(a)(3)..........................................................18

        4.   Adequacy under Rule 23(a)(4) ..........................................................19

    D.   The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes ................................20

    E.   The Proposed Notice Provides Adequate Notice To Members Of The Class....................22

1.  The notice satisfies due process .................................................................. 22

2.  The proposed class notice is accurate, informative and easy to understand ................. 23

F.  A final fairness hearing should be scheduled ................................................ 24

VI.  PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS ........................................... 24

A.  The Attorney Fees And Costs Requested Are Reasonable And Customary ...................... 24

1.  The size of the fund created and the number of beneficiaries, as well as the value of the benefits supports the requested fee ...................................................... 25

2.  The absence of substantial objections by members of the class supports the fee ......... 25

3.  The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result Supports the Requested Fee .............................................................. 26

4.  The complexity and duration of the litigation favor approval ............................ 27

5.  There was a significant risk of nonpayment; ............................................. 27

6.  Plaintiff's counsel devoted substantial time to the case ............................... 27

7.  The awards in similar cases supports the requested fee .................................. 28

8.  Class counsel's costs should be approved ............................................... 29

B.  This settlement is on par with recent settlements involving oil and gas companies ......... 29

VII.  CONCLUSION ................................................................................ 30

## TABLE OF AUTHORITIES

**Federal Cases**

*Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. Pa. Sept. 10, 2015)...................................................................................................................30

*Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437 (E.D. Pa. 1995)....................................10

*Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) ............................................................................................................28

*Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006).......................................................................10

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ........................ 28, 29

*Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012)......................................................................................................28

*Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) ................................................................................................................................28

*Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) ................................................................................................................................26

*Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.)..................................................................................................28

*Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985).........................11

*Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100, ECF No. 43 (S.D. Tex. Nov. 19, 2015) ................................................................................................................................30

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975)..................................................................................8

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) ............................................25

*Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH, ECF No. 43 (W.D. Pa. Oct. 30, 2015)...............................................................................................................30

*In re AT& T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) ..................................................24

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) ..............................................24

*In re Chickie's & Pete's Wage & Hour Litig.*, 2:12–cv–06820, 2014 WL 911718 (E.D.Pa. Mar.7, 2014) ................................................................................................................................8

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974)......................................................................................................................11

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009)...................................... 24, 25

*Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998) ....................................................24

*Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514 (E.D. Pa. July 16, 2015)..........7

*McGee v. Ann's Choice, Inc.*, C.A. 2:12-cv-02664, 2014 WL 2514582 (E.D.Pa. June 4, 2014).....7

*Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004).................................................................29

*Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ......................................................11

*Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011)10

*Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE, ECF No. 53 (W.D. Pa. Sept. 22, 2015)..................................................................................................................30

*Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013)..............................................28

*Terry v. Tri-State Wireline, LLC*, C.A. 2:15-cv-00382-NBF, ECF No. 31 (W.D. Pa. Jan. 14, 2016) ................................................................................................................................29

*Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) ..28

*Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) ...................................................................................................................................................28

**Statutes**

43 P.S. § 333.113 ...................................................................................................................................29

## I.    INTRODUCTION

Plaintiffs Michael Ceuric, Michael Carnley, and Brandon Fink, individually and on behalf of all other similarly situated employees (collectively, "Plaintiffs"), file this unopposed motion for preliminary approval the settlement reached in this case. The settlement is a reasonable compromise that will adequately compensate the participants for the unpaid overtime hours alleged and will eliminate the need for the Parties to engage in protracted and expensive litigation.

## II.    BACKGROUND

Plaintiff Michael Ceuric filed this class and collective action on September 24, 2017. ECF No. 1. He allege Tier One, LLC d/b/a Tier 1 Rental and Distribution ("Tier One" or "Defendant") failed to pay him and similarly situated workers overtime at one and one-half times their regular rate of pay when they worked over 40 hours a week, and misclassified them as exempt from the overtime requirements as day rate independent contractors, in violation of the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA"). *Id*. Subsequently, on March 7, 2018, Ceuric amended his complaint, to include Michael Carnley and Brandon Fink as additional named plaintiffs, and to add claims under the Pennsylvania Minimum Wage Act ("PMWA"), the Ohio Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act. ECF 61. During the course of the litigation, more than 70 additional plaintiffs opted-into the action. ECFs 9, 10, 32, 34, 35, 37, 45, 52, 56, 58, 63, 66, 70, 71, 73, 81, and 85.

Together, Ceuric, Carnley, Fink and the opt-in plaintiffs sought damages for unpaid wages, unpaid overtime compensation, liquidated damages, other damages, attorneys' fees and litigation costs under the FLSA, New Mexico, Ohio, and Pennsylvania wage and hour laws; conditional certification under Section 216(b) of the FLSA; and class certification under Federal Rule of Civil Procedure 23.   The Parties agreed to conditional certification.

On April 19, 2018, the Parties agreed to mediate this case with experienced wage and hour

mediator Carole Katz. https://www.carolekatz.com. Before and after the June 7, 2018 mediation, the Parties obtained, through discovery, thousands of pages of compensation data to evaluate the scope of Defendant's potential violations under the FLSA, PMWA, NMSA, and Ohio Laws. Class Counsel's investigation ultimately revealed that Plaintiffs and their fellow coworkers (the Class Members) consisted of Solids Control Consultants ("Solids Control Consultants"). Plaintiffs alleged that these workers performed largely technical and manual labor type job duties and routinely worked 12 hours a day for 5 to 7 days a week. Class Counsel also learned that Tier One decided to reclassify numerous workers after the filing of this lawsuit.

Negotiations before, at, and after mediation were long and contentious, as was the motions practice surrounding the class and Plaintiffs' claims. The Parties hotly contested Defendant's actions, good faith, pay practices, and other issues. Ultimately, the following settlement was finalized with the help of Mediator Carole Katz and the Court in November 2018:

| | |
|---|---|
| Maximum Settlement Fund: | $1,000,000.00 |
| Attorney Fees: | $333,333.00 |
| Costs and Expenses: | $20,000.00 |
| Enhancement Award: | $15,000.00 ($5,000 per Representative Plaintiff) |
| Net Settlement Fund: | $631,666.67 |

Plaintiffs' participating in the Settlement will receive meaningful relief for their claimed overtime hours. Plaintiffs submit this is a fair and reasonable result of a *bona fide* dispute concerning the payment of wages to Tier One's underpaid and misclassified workers.

## III.    SETTLEMENT TERMS

The Settlement terms are set forth in the Settlement Agreement. *See* Exhibit 1. The Settlement is being offered on an "opt-out" basis pursuant to Section 16(b) of the FLSA. 29 U.S.C. § 216(b). Only those workers who elect to not participate will not be bound – also not receiving their

settlement shares. Those workers who elect to participate, by doing nothing in response to the notice, in the Settlement will receive their pro rata allocation of the Settlement funds. Each worker's settlement amount is, of course, different. However, because the violations resulted from Defendant's uniform pay practices, a single formula will be applied to the entire FLSA class to determine each worker's pro rata allocation.

The Settlement will be facilitated by a Settlement Administrator, who will: (1) establish a Qualified Settlement Fund; (2) send the Notice Packets; (3) report the progress to counsel; (4) distribute settlement checks; (7) report taxes; and (8) deposit any unclaimed portion of the Settlement with the lost property department of the state. *See* Exhibit 1, ¶ 13, 14.  The Settlement Administrator will be compensated by Class Counsel.  *Id.*, ¶ 14(e). Rule 23 Class Members will have 45 days to opt out and/or object to the settlement.

In exchange for accepting the Settlement, Plaintiffs, FLSA Opt-Ins, and Rule 23 Class Members who have not opted out will release Tier One, and their past, present and future parent companies, subsidiaries, corporate affiliates, divisions, employees, owners, members, officers, directors, investors, legal representatives, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers, from claims against Tier One that were or could have been asserted in the Action based on allegations of unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising during the Class Periods, and arising under the FLSA, Pennsylvania Minimum Wage Act, and Ohio Fair Minimum Wage Act, or the Wage Payment and Collection Laws of Ohio and Pennsylvania. *See* Exhibit 1, ¶ 12. Settlement Class Members' rights are only extinguished if they negotiate the settlement check. Ex. 1, ¶ 11, 12(d), 26.

Within 14 business days after the entry of the Final Approval Order, the Settlement Administrator will mail the settlement payments to the class members who did not opt out. Ex. 1,

3

¶13(b)(ii). Fifty percent (50%) of each settlement payment will be treated as back wages, and the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law. *Id.*, ¶ 14(g). Tier One shall ensure payment of an employer's share of all required FICA and FUTA taxes on such amounts. *Id.* Withholding shall be at the 22% supplemental wage tax rate. *Id.* The remaining 50% of each Settlement Award shall be treated as non-wage liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Michael Ceuric, Michael Carnley, and Brandon Fink will receive an additional payment of $5,000.00 as an Enhancement Award for their services as a Class Representatives in this Litigation ("Enhancement Award"). The Enhancement Award will be paid as IRS Form 1099 income not subject to withholdings. Ex. 1, ¶ 14(d).

## IV.    ARGUMENT & AUTHORITY

### A.  The FLSA settlement agreement should be approved by the court

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F.Supp.3d 474, 476 (E.D.Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir.1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A. 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D.Pa. Aug. 8, 2013) (quoting

*Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.*, C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

B. A *Bona Fide* Dispute Existed

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D.Pa.2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* 1989 WL 14063, at *4 (E.D.Pa.1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching," *Brumley v. Camin Cargo Control, Inc.*, C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.*, C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[1] This inherent inequality, of course, is diminished when workers are represented by experience counsel. See Ex. 1, ¶ 3-9. Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc*., C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case

---

[1]      *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986)(in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

to be an adequate indicator of the fairness of the settlement." *Id.* So, absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

In the instant case, the Parties fiercely contested the claims and defenses asserted. Plaintiffs alleged that they were misclassified as independent contractors and were routinely paid a day rate with no overtime compensation when they worked more than forty hours in a single workweek. ECFs 1, 61. Plaintiffs alleged that this per se violation of the FLSA exposed Defendant to substantial liability for back wages, liquidated damages, attorney fees, and costs. 29 U.S.C. §216(b). Tier One acknowledged that it employed Plaintiffs, but claimed that its misclassification decision was not made in bad faith, or willfully. ECF 68. Because the Parties disagreed on whether Plaintiffs could satisfy their burden to demonstrate that Defendant acted willfully, the issue of damages was fiercely contested. Whether an FLSA violation was willful affects whether Plaintiffs could recover back wages for two (2) years or three (3) years. 29 U.S.C. § 255. Similarly, Plaintiffs also contend that Tier One would be unable to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. 29 U.S.C. § 260. Defendant maintained that, at all times, it acted in good faith, and damages (if any) should be recovered only for a two (2) year period. Plaintiffs alleged further that Tier One retaliated against them for exercising their rights under the FLSA, which prompted multiple motions, briefs, hearings, and orders. ECFs 38, 39, 44, 46, 47, 48, and 57.

As a result of all of the filings, arguments, documentation, hearings, discovery, and motions in the instant suit, the current settlement before the Court is the result of a bone fide dispute. The parties disputed liability in this case and only through, and after mediation, were able to reach a compromise.

C.  The settlement is fair and reasonable

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.,* C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D.Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc*., No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013) The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017). "In general, settlement is the preferred means of resolving litigation, and there remains a "strong presumption" in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution" *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *4(internal citations omitted).

When evaluating whether a proposed settlement is fair and reasonable, courts in the Third Circuit often turn to the *Girsh* test for evaluating proposed class or collective action settlement agreements. *See Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975); *see also, e.g., In re Chickie's & Pete's Wage & Hour Litig.,* 2:12–cv–06820, 2014 WL 911718, at *3 (E.D.Pa. Mar.7, 2014). The nine factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157 (quotation omitted). Here, the *Girsh* factors strongly favor final approval of the Settlement Agreement.

1. The complexity, expense and likely duration of the litigation support approval of the settlement

"This first Girsh factor requires the Court to consider 'the probable costs, in both time and money, of continued litigation.'" *Galt v. Eagleville Hosp*., 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 812 (3d Cir. 1995) Cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement. *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5 (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 318 (3rd Cir.1998)). Here, despite the discovery that has already occurred, both sides would require additional substantial discovery in order to place the case in a trial posture. Continued litigation of the would cases result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp*., No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the court should not have to needlessly expend judicial

resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5.

2. <u>The class supports to the settlement</u>

This factor "attempts to gauge whether members of the class support the settlement." *Fein v. Ditech Fin., LLC*, No. 5:16-CV-00660, 2017 WL 4284116, at *9 (E.D. Pa. Sept. 27, 2017)(citing In re Prudential, 148 F.3d at 318). "Silence from the class is generally presumed to indicate agreement with the settlement terms." *Young v. Tri Cty. Sec. Agency, Inc*., No. CIV.A. 13-5971, 2014 WL 1806881, at *6 (E.D. Pa. May 7, 2014)). At this time, no class members have objected to, or sought exclusion from, the proposed settlement. This case strongly supports the approval of the settlement. *See Galt*, 310 F. Supp. 3d at 494.

3. <u>Settlement is appropriate at this stage of the proceedings</u>

"In evaluating the third Girsh factor, the Court assesses "the degree of case development that [C]lass [C]ounsel have accomplished prior to the settlement," in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id*.; *see In re Gen. Motors*, 55 F.3d at 813. Here, adequate discovery was completed prior to mediation. Through discovery and third-party subpoenas, Class Counsel reviewed thousands of pages pertaining to payroll records, earnings statements, and timesheets of the class members, as well as the contracts and policies of defendant or its subcontractors. Each side was cognizant of the relative strengths and weaknesses of their case during negotiations. The Parties spent more than a year litigating this action and several months negotiating settlement discussions with an experienced mediator. This factor weighs in favor of approval.

4. <u>The settlement is fair and reasonable in light of the risks to establishing liability and damages, and the risk of maintaining the class action through the trial</u>

The fourth, fifth, and sixth *Girsh* factors also strongly favor final approval of the parties' settlement agreement. "The fourth and fifth Girsh factors require the Court to "survey the possible

9

risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Galt*, 310 F. Supp. 3d at 494 (E.D. Pa. 2018); *see In re Prudential*, 148 F.3d at 319. "In balancing these considerations, the Court "should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *11 (E.D. Pa. Nov. 4, 2014). Trying this case would involve significant risks to the class members, as there is a substantial risk of a significantly reduced recovery or no recovery at all in this action. Defendant maintains that it has significant defenses to liability, that the workers are either exempt employees or properly classified as independent contractors, that the workers were properly compensated, and that it acted in good faith. *See Lachance v. Harrington*, 965 F.Supp. 630, 639 (E.D. Pa. 1997)("The court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action").

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.[2] Both sides have had considerable experience in prosecuting, defending, and settling federal and state commercial and wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute

---

[2] Plaintiffs' counsel has served as lead counsel in numerous of large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). Tier One is represented by experienced labor and employment counsel from Eckert Seamans Cherin & Mellott, LLC.

significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Additionally, the potential class faces significant risk under the sixth *Girsh* factor that it can be certified and then maintained through trial. The Parties agreed to conditional certification, but Tier One has indicated that it believes the class is not appropriate and should not be maintained. Should the case proceed, and regardless of whether such a challenge would succeed, motion practice on this issue is likely to increase both the length and expense of the litigation. *See Galt*, 310 F. Supp. 3d at 495. These factors, taken together, indicate that continued litigation presents a risk to recovery for the Plaintiff and the class, and that settlement is reasonable in light of these risks.

5.  <u>The settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation</u>

The eighth and ninth *Girsh* factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012)(citing *In re Prudential*, 148 F.3d at 322).  Had the case been pursued through trial and been successful on all claims, the recovery here may have been greater than the settlement.  "However, [i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at \*10 (E.D. Pa. Apr. 15, 2015).

11

Even if the "best possible recovery" significantly exceeds the Settlement amount, this award could only be attained by continued litigation and after a favorable result from each of the remaining stages of litigation, including possible dipositive motions, the possibility the class will not be certified, threats of decertification even if it is, and then trial and a possible appeal. These risks far outweigh the present value of an immediate, and not inconsiderable, cash settlement.

Importantly, the Settlement was the result of an all-day mediation sessions between the parties with the assistance of experienced mediator, Carole Katz, who specializes in mediation of class, collective, and individual employment cases, including wage and hour cases, under the FLSA and state analogues, such as misclassification as exempt or independent contractor,. https://www.carolekatz.com/faqs.  The Settlement was negotiated by attorneys who have been vigorously prosecuting this and similar claims for many years. These attorneys have had considerable experience in wage and hour claims, both federal and state claims, and in this case both parties were aware of and negotiated based upon the inherent risks with pursuing the case to trial.  Both parties feel that the Settlement Fund of $1,000,000.00 is more than reasonable in light of these risks and the possible damages recoverable by the class. *See Austin*, 876 F.Supp at 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").  These factors favor approval of the Settlement.

There is no foundation to dispute the fairness of this proposed Settlement which resulted from arm's length negotiations. The proposed Settlement does not grant preferential treatment to the class representatives and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for approval are met in this case and the Court should grant Plaintiff's motion in its entirety. *See also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

## V.    THE RULE 23 SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED BY THE COURT

By this Motion, Plaintiffs seek, and Tier One does not oppose, preliminary approval of the Rule 23 Settlement Agreement. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II"). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. Federal Rule 23(e) provides that the Court must approve any settlement of a class action. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("GM Trucks"). Indeed, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id*. at 784. The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is fair and should be preliminarily approved.

A. The standards and procedures for preliminary approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a

class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily
> dismissed, or compromised only with the court's approval. The following
> procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) The court must direct notice in a reasonable manner to all class
> > members who would be bound by the proposal.
> >
> > (2) If the proposal would bind class members, the court may approve
> > it only after a hearing and on finding that it is fair, reasonable,
> > and adequate.
> >
> > (3) The parties seeking approval must file a statement identifying
> > any agreement made in connection with the proposal.
> >
> > (4) If the class action was previously certified under Rule 23(b)(3),
> > the court may refuse to approve a settlement unless it affords a
> > new opportunity to request exclusion to individual class
> > members who had an earlier opportunity to request exclusion but
> > did not do so.
> >
> > (5) Any class member may object to the proposal if it requires court
> > approval under this subdivision (e); the objection may be
> > withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d

at 316.

In determining whether preliminary approval is warranted, the primary issue before the

Court is whether the proposed settlement is within the range of what might be found fair,

reasonable and adequate, so that notice of the proposed settlement should be given to class

members, and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX

LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary

approval stage, "[t]he judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. *Id.* at 322. Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *Id*. at 320. In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id*. at 320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. *See* MANUAL FOURTH §21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."). The standard for final approval of a Rule 23 class action settlement consists of showing that the settlement is fair, reasonable, and adequate. *Prudential II*, 148 F.3d at 316-17; *GM Trucks*, 55 F.3d at 785; *Stoetzner v. U.S. Steel Corp*., 897 F.2d 115 (3d Cir. 1990); *Walsh v. Great Atlantic & Pacific Tea Co*., 726 F.2d 956 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). As detailed in Section 5.1.2, the Settlement is fair, reasonable, and adequate.

B. Certification of the settlement class is appropriate

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have resolved in the federal courts, the Parties have stipulated, for settlement purposes only, to all Plaintiffs, Opt-in Plaintiffs, and the 48 Rule 23 Pennsylvania and Ohio Class Members who had not joined the case prior to June 7, 2018. Ex. 1, ¶ 3.

The Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See*

*Amchem*, 521 U.S. at 591; *Prudential II*, 148 F.3d at 283; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998). Here, and for settlement purposes only, Ceuric submits that the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, warrants settlement class certification.

C.   The elements of rule 23(a) are satisfied for settlement purposes only in the present case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the Representative Plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *see e.g. Barnes v. American Tobacco Co.,* 161 F.3d 127 (3d Cir. 1998); *Prudential II*, 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239 (3d Cir. 1975). Here, Plaintiff submits that all four elements are satisfied for purposes of certifying the settlement Class.

1.   Numerosity under rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.RD. 65, 73 (D.N.J. 1993) ("precise enumeration of the members of a class is not necessary."); *Zinberg v. Washington Bancorp, Inc*., 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity."). Numerosity is satisfied here because the Pennsylvania and Ohio Classes includes approximately 49 individuals, plus the over 70 opt-ins with Rule 23 claims. *See  Slanina v. William Penn Parking Corp.,* 106 FRD 419, 423

16

(WD PA 1984) (certifying class of 25 persons); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of class of at least 31 individual class members).

###### 2.  Commonality under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if Plaintiffs' grievances share common questions of law or of fact. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). A Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case.  "Factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F .3d at 56; *Prudential II*, 148 F.3d 283. Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* 1 A. Conte & H. Newberg, Newberg on Class Actions (Fourth), § 3.10, at 272-74 (2002); accord *Baby Neal*, 43 F.3d at 56. Commonality exists where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig*., 104 F.R.D. 422, 429 (E.D. Pa. 1984). As the Third Circuit has noted, this requirement is "not a high bar."  *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004).  According to Plaintiff, commonality is met here insofar as the claims of the Class Representative and the members of the class are predicated on the core common issue as to whether Defendant's alleged employees were properly classified as independent contractors when paid a day rate, without any salary. At least in the settlement context, this is sufficient to meet the Rule 23(a)(2) standard of commonality. Specifically, Plaintiff, like his co-workers, were treated as independent contractors and only paid a day rate. They did not receive additional compensation for any hours worked over forty in a workweek.  Thus, based on his work experiences and allegations against Tier One, the commonality element is satisfied.

17

3.   Typicality under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation*, 104 F.R.D. at 429-30. The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Hayworth v. Blondery Ceuric & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). In other words, typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 (3d Cir. 1984). Here, too, this requirement is met by the proposed Settlement Class to the extent that the claims, for settlement purposes only, arise from a common course of conduct alleged by Plaintiff, e.g., Defendant's alleged practice of failing to compensate the Class for all hours worked as a result of the uniformly applied day rate practice applicable to all independent contractor Class Members.

4.   Adequacy under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit has ruled that:

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811, quoting *Wetzel*., 508 F.2d at 247; *see also Prudential II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued. The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representations will be inadequate." *Asbestos School Litigation*, 104 F.R.D. at 430, *citing Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp*., 151 F.R.D. 378 (D. Colo. 1993) (quoting 3 Newberg on Class Actions (Fourth), §7.24 at pp. 78-79 (2002)).

Adequacy is easily met here with regard to the Settlement Class Counsel's qualifications – Plaintiff's attorneys, proposed Settlement Class Counsel, are exceedingly experienced and competent in complex litigation and have an established track record in wage and hour cases. *See* Dunlap Dec. at ¶¶ 3-17, Ex. 2. In addition, there is no evidence that the Settlement Class Representative has interests inconsistent to that of the settlement class.  Indeed, Plaintiff has dutifully assisted his Counsel in this case and meets the criteria for participation in this settlement. Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here for settlement purposes only, Plaintiff now turns to consideration of the factors which, independently, justify class treatment of this action for present purposes under subdivision 23(b)(3) of the rule.

D.  The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes

Plaintiff's proposed Class also meets the requirements of Rule 23(b)(3). Under 23(b)(3) a

class action may be maintained if:

> the court finds that the questions of law or fact common to the members of
> the class predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods for
> the fair and efficient adjudication of the controversy. The matters pertinent
> to the findings include: (A) the interest of members of the class in
> individually controlling the prosecution or defense of separate actions; (B)
> the extent and nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular
> forum; (D) the difficulties likely to be encountered in the management of a
> class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed Class is sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although Rule

23(b)(3) requires that common issues of law and fact predominate, it does not require that there be

an absence of any individual issues. *In re Sugar Industry Antitrust Litig.*, 73 F.RD. 322, 344 (E.D.

Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a

common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978);

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) (in determining whether common issues of

fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is

common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact

be common. *See In re Telectronics Pacing Systems*, 172 F.RD. 271, 287-88 (S.D. Ohio 1997). In

this regard, courts generally focus on the liability issues, and if these issues are common to the

class, common questions may be held to predominate over individual questions.

*See Id.*

According to Plaintiffs, common questions of law and fact predominate. Among the common questions of law and fact are:

    a.   Whether Tier One has engaged in a pattern or practice of not paying members of the Class for all of the hours overtime for each hour in excess of forty hours in a single week;

    b.   Whether Tier One has engaged in the alleged wage violations uniformly regardless of locations worked;

    c.   Whether Tier One violated Pennsylvania and Ohio law by failing to compensate members of the Class all hours worked in excess of forty hours in a single workweek;

    d.   Whether Tier One is liable for unpaid wages and overtime pay, liquidated damages, attorneys' fees, costs and interest; and

    e.   Whether this lawsuit should be maintained as a class action based on Tier One's violations of Pennsylvania and Ohio law.

Plaintiffs also believe that superiority is met because this settlement will resolve the pending lawsuits against Tier One in a single, consolidated proceeding – obviating the need for multiple trials in multiple transferee venues – and, given Plaintiffs' argument regarding commonality of claims relating to a standard policy of Tier One there would be little or no interest for each class member to proceed with their own cases. Indeed, the plan of distribution here treats all equitably by providing payments based upon length of employment, a distribution that makes particular sense in a case such as this. Accordingly, strictly for the purposes of settlement, the Parties agree that individual variations in the type or magnitude of damage suffered by individual class members should not affect predominance, as the class representatives' position is that they have suffered the same type of damages – and seek the same type of relief – as all members of the proposed class.

Finally, Plaintiffs' position is that resolution of this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief. The Settlement provides the Class with an ability to obtain prompt, predictable and certain relief, whereas

individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process. Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in what could be a dozen or more separate trials, including trials in each of the lawsuits being settled herein. Accordingly, strictly for purposes of the settlement posture in which the case now stands, the Class is appropriate and should be certified for settlement purposes only.

E.   The Proposed Notice Provides Adequate Notice To Members Of The Class

1.   The notice satisfies due process

The Parties propose that a Settlement Administrator send, by First Class Mail, and Email, to each member of the Class, as defined above and in the Settlement Agreement, the Notice attached hereto as Exhibit. 1-A.

The Parties propose that the Notice be sent to all known and reasonably ascertainable members of the Class based on Tier One's records and the criteria described in detail in the Settlement Agreement. The notice will be sent by First Class Mail and Email. The Settlement Agreement provides that the Claims Administrator will endeavor to ensure that all members of the Class receive notice by taking all reasonable steps to trace the addresses of any member of the Class for whom a Notice Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable. *See also, e*.g., *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement

that the Court direct 'best notice that is practicable under the circumstances'")(quoting FED.R.CIV.P. 23(c)(2)(B), (e)); *Davis v. Abercrombie & Fitch Co.*, No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009)(approving issuance of notice to class using a similar method as applied here); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009)(finding similar mail procedure as applied here to be the "best notice practicable"); *Adams v. Inter-Con Security Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007)(finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

    2.   The proposed class notice is accurate, informative and easy to understand

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class. *See Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-into the Action. 29 U.S.C. § 216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the settlement will provide members of the Class, the procedures and deadlines for opting out of the of the Settlement Class and submitting objections, the consequences of taking or foregoing the various options available to members of the Class, and the date, time and place of the final settlement approval hearing. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312. Pursuant to Fed. R. Civ. P.

23(h), the proposed Notice also sets forth the maximum amount of attorneys' fees and costs that may be sought by Plaintiff and his counsel. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.,* 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.311-21.312.

F.  A final fairness hearing should be held

The Court has set the fairness hearing for February 11, 2019 at 9:30 a.m.

## VI.  PRELIMINARY AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 54(d)(2), Plaintiff's counsel seeks an award of attorneys' fees in the amount of $333,333.33 one third of the Gross Settlement Amount, and costs not to exceed $20,000.00 from the Gross Settlement Amount. After extensive negotiation, Tier One does not oppose Plaintiff's counsel's application for these payments and costs from the Gross Settlement Fund. *See generally*, Ex. 1.

A.  The Attorney Fees And Costs Requested Are Reasonable And Customary

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig*., 582 F.3d 524, 540 (3d Cir. 2009); *In re AT& T Corp. Sec. Litig*., 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig*., 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *Krell v. Prudential Ins. Co*., 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*. 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 (3d Cir. 2000) and *Prudential,* 148 F.3d at 342). These factors support approval of the requested fee and are discussed below.

1. The size of the fund created and the number of beneficiaries, as well as the value of the benefits supports the requested fee

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the $631,666.67 of the Net Settlement Fund will be distributed to Settlement Class Members on a *pro rata*.  More specifically, the Maximum Settlement Amount is based on an analysis of each workweek that each Class Member worked for Tier One during the relevant time period. The Maximum Settlement Amount represents a substantial portion of unpaid overtime damages owed to FLSA and Pennsylvania Class Members. For these reasons, the Settlement creates a substantial benefit for members of the Settlement Class. See Dunlap Decl. at ¶¶ 22-29 attached as Exhibit 2.

2. The absence of substantial objections by members of the class supports the fee

To date, there have been no objections to either the settlement terms generally or to the attorney fee request specifically. The absence of any objection weighs in favor of the fee request. *See*

*Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011).

3. The Skill and Efficiency of Class Counsel That Enabled Them to Obtain This Result Supports the Requested Fee

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Dunlap Decl. at ¶¶3-9, Ex. 2. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and invested time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *Id*. at ¶ 32.

The Settlement reached with Tier One, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and various states' wage and hour laws, is a reflection of Class counsel's experience. *See Id*. at ¶¶ 3-16. This Settlement was reached after (1) extensive fact discovery, including exchanging numerous pages of documents; (2) a notice and opt-in period; and (3) a full day of mediation with experienced wage and hour mediator Carole Katz, which included follow up arm's length negotiations between counsel for the parties. *Id.* at ¶¶ 17-21.

The Settlement provides Ceuric and members of the Settlement Classes with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

26

4.   The complexity and duration of the litigation favor approval

As discussed above, this case has been pending for more than a year.  Documents pertaining to the procedures of and payments by Defendant and its subcontractors were obtained through discovery and third-party subpoenas, and Plaintiffs were forced to compel discovery responses. The parties engaged in analysis of wage-and-hour records for each plaintiff and enlisted a professional mediator experienced in wage-and-hour litigation to aid in resolution. Tier One moved for summary judgment and challenged the form of the notice for condition certification, which the court was forced to resolve.  Moreover, further litigation of this case without a settlement would be lengthy and expensive for both parties.

5.   There was a significant risk of nonpayment;

Counsel represented Plaintiffs entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the Settlement. Ex. 2 at ¶ 32.  Counsel invested time and expenses despite the potential that the court would find no violation of the FLSA, despite the potential the class would not be certified, or decertification of the class once conditionally certified, and the possibility of appeals. Given these considerations, the risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012)

6.   Plaintiff's counsel devoted substantial time to the case

Plaintiffs' Counsel consisted of a team of attorneys, paralegals and staff all dedicated to working up and prosecuting the class's claims. This work included investigation and interviews with putative class members and opt-in Plaintiffs, obtaining consents from opt-in members, reviewing documents produced by Defendant or its subcontractors in discovery, reviewing and analyzing time and payroll data, attempting to resolve discovery disputes, responding to summary judgment, and engaging in extensive settlement negotiations.  Ex. 2, ¶ 11; see ECF 17, 46, 53.

These efforts support the approval of fee requested.  *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

7.  The awards in similar cases supports the requested fee

The requested fee is also consistent with awards in similar cases. *See* Ex. 2 at ¶ 30. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12  (approving fee of one-third of the common fund and citing *In re Gen. Motors*., 55 F.3d at 822).

Here, Class Counsel's request for one third of the Gross Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g.,  Rouse v. Comcast Corp*., 2015 WL 1725721, at *12 (E.D. Pa. 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35% for FLSA, PMWA, and WPCL claims); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and median award was 33.3%). The attorneys' fees request of 33% percent of the Settlement fund also comports with privately

negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21. Accordingly, the fees approved in similar cases further support the requested fee here.

8.  Class counsel's costs should be approved

In addition to being entitled to reasonable attorneys' fees, the FLSA and Pennsylvania wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel has agreed that its costs will not exceed $20,000.00. Class Counsel's costs will include reasonable out-of-pocket expenditures such as filing fees, travel for hearings, mediation, client meetings, and Westlaw. *See* Ex. 2, at ¶ 31. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, and (11) the cost of hiring a mediator, to be reasonable). All of these expenses were reasonable and necessary for the successful prosecution of this case.  Class Counsel will also be responsible for compensating the Settlement Administrator. Ex. 1, ¶ 14(e).  Finally, pursuant to the terms of the Settlement Agreement, Tier One does not object to the request for costs.

B.  This settlement is on par with recent settlements involving oil and gas companies

The Court should finally approve this Settlement because it is in line with recent wage and hour settlements involving oil and gas service companies. In *Terry v. Tri-State Wireline, LLC*, Judge Fischer approved a class and collective action settlement involving wireline operators paid a salary and a job bonus. *Terry,* C.A. 2:15-cv-00382-NBF, ECF No. 31 (W.D. Pa. Jan. 14, 2016). In that case, the Court approved attorney fees of 35%, $25,000.00 in attorney costs, $5,500.00 in

settlement administration costs, and $20,000.00 in enhancement awards. The Court held that the settlement was substantially fair and reasonable under the applicable Third Circuit jurisprudence. *See also Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100, ECF No. 43 (S.D. Tex. Nov. 19, 2015). (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH, ECF No. 43 (W.D. Pa. Oct. 30, 2015) (approving a collective action settlement involving oil and gas employees alleging violations of the regular rate for purposes of calculating overtime); *Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE, ECF No. 53 (W.D. Pa. Sept. 22, 2015); (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. Pa. Sept. 10, 2015) (same). This case follows these trends and should be approved.

## VII.    CONCLUSION

For these reasons, Plaintiffs respectfully request the Court grant the Unopposed Motion For Preliminary Approval of the Settlement.

Respectfully submitted,

/s/ Andrew W. Dunlap
Michael A. Josephson
Pennsylvania Bar No. 308410
Andrew W. Dunlap
Texas Bar No. 24078444
(*Pending Pro Hac Vice*)
JOSEPHSON DUNLAP LAW FIRM
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

AND

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com


AND

 Richard J. (Rex) Burch
Texas Bar No. 24001807
 *(pending pro hac vice)*
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on November 28, 2018.

/s/ Andrew W. Dunlap
Andrew W. Dunlap